**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM WISE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SOLAR TURBINES, INC., a Delaware Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 14-CV-8 JLS (JMA)<br><br>**ORDER: (1) DENYING PLAINTIFF'S MOTION TO REMAND; AND (2) DENYING AS MOOT DEFENDANT'S MOTION FOR LEAVE TO FILE A SUR-REPLY**<br><br>(ECF Nos. 9, 16) |

Presently before the Court is Plaintiff William Wise's ("Plaintiff") Motion to Remand ("MTR"). (ECF No. 9.) Also before the Court is Defendant Solar Turbines, Inc.'s ("Defendant") Response in Opposition (ECF No. 11), Plaintiff's Reply in Support (ECF No. 12), and Defendant's Motion For Leave To File a Sur-Reply (EFC No. 16). The Court vacated the motion hearing set for March 6, 2014 and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 13.) Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's MTR and **DENIES AS MOOT** Defendant's Motion For Leave To File a Sur-Reply.

**BACKGROUND**

In or around January 1989, Defendant hired Plaintiff. (Compl. ¶ 15, ECF No. 1-2.) Plaintiff's employment was governed by a Collective Bargaining Agreement ("CBA"). (*See id.* ¶ 38(c); *see also* CBA, ECF No. 11-1.) In or around 2003, Defendant made Plaintiff a Safety Representative. (Compl. ¶ 16, ECF No. 1-2.) In or around August 2011, Plaintiff's coworker, Julian Herrera ("Herrera"), was transferred to Plaintiff's shift. (*Id.* ¶ 21.) Thereafter Plaintiff and his coworkers observed Herrera making racist comments and engaging in disruptive behavior. (*Id.* ¶¶ 22–31.) Plaintiff notified his shift supervisor, Jeff Daum ("Daum"), about Herrera's ongoing behavioral issues, but Daum failed to address the problem. (*Id.* ¶¶ 31, 35.)

Eventually, Plaintiff complained to Will Sullivan, Daum's supervisor. (*Id.* ¶ 36.) When Daum learned of this, he purportedly retaliated against Plaintiff by transferring him to a less desirable work location. (*Id.* ¶¶ 38–40.) Plaintiff's seniority, conferred by the CBA, was allegedly ignored in the transfer. (*Id.* ¶ 38.) Subsequently, Plaintiff complained to his supervisors that he was not receiving proper training in his new position. (*Id.* ¶¶ 41–45.) Plaintiff's supervisors, however, ignored his concerns. (*Id.* ¶ 46.)

In or around February and March 2012, Plaintiff further complained about Defendant's unsafe work practices and hostile work environment. (*Id.* ¶¶ 47–63, 75.) Subsequently, Plaintiff was transferred several more times, including once to Herrera's work area. (*Id.* ¶¶ 64–66.) In or around October 2012, Plaintiff's physician informed Plaintiff that he could only perform light-duty work until he underwent a surgery in January 2013 (*Id.* ¶ 69.) When Plaintiff informed Daum, Daum refused to accommodate him and instead placed him on involuntary disability leave. (*Id.*) Plaintiff remained on disability leave until in or around May 2013, when he was placed on light duty. (*Id.* ¶ 71.) On or around June 28, 2013, Defendant constructively terminated Plaintiff. (*Id.* ¶ 83.)

On December 4, 2013, Plaintiff filed an action in California state court asserting

six state-law claims: (1) retaliation; (2) discrimination on the basis of physical disability; (3 & 4) wrongful constructive termination in violation of public policy; (5) negligent supervision; and (6) intentional infliction of emotional distress. (*See generally* Compl., ECF No. 1-2.) On January 2, 2014, Defendant removed the case to federal court pursuant to 28 U.S.C. § 1441(a). (Notice of Removal, ECF No. 1.) Plaintiff now moves to remand to state court for lack of subject matter jurisdiction.

**LEGAL STANDARD**

If it appears at any time after a case has been removed from state court that the district court lacks subject matter jurisdiction, the case must be remanded. 28 U.S.C § 1447(c). Whether a court has federal-question jurisdiction over a case is generally "governed by the 'well-pleaded complaint rule.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Pursuant to this rule, federal-question jurisdiction only exists when pleaded by the plaintiff, thereby preventing removal solely on the basis of a federal defense, including preemption. *See id.* However, there is an exception.

Under the "complete preemption" doctrine, the U.S. Supreme Court has held that particular federal statutes completely preempt areas of state law. *Id.* at 1107 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). A state-law claim so preempted is considered to have arisen under federal law, thereby creating federal subject matter jurisdiction over the claim. *See id.*

The Supreme Court has held that Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), in some instances, falls within the complete preemption doctrine. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has repeatedly held that Section 301 of the LMRA preempts state law when a state-law claim requires the interpretation of a collective bargaining agreement. *See, e.g., Lingle*, 486 U.S. at 413; *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 853 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007); *Balcorta*, 208 F.3d at 1107. However, Section 301 does not preempt every claim that involves a collective bargaining agreement.

The Supreme Court has warned that "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[D]efensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim." *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (9th Cir. 2002) (citing *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691–92 (9th Cir. 2001)).

## ANALYSIS

Plaintiff argues that all of his claims are plainly based on state law; thus, no federal question is raised, and this Court lacks jurisdiction. (*See* MTR 2–3, ECF No. 9.) Defendant, however, argues that Plaintiff's claims are preempted by federal law, rendering removal proper. (Opp'n 6, ECF No. 11.)

### I. Plaintiff's Intentional Infliction of Emotional Distress Claim Is Preempted

Under California state law, Plaintiff's intentional infliction of emotional distress ("IIED") claim requires that he show

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. . . . Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.

*Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991) (internal quotation marks and citations omitted).

A plaintiff faces an "uphill battle" when he attempts to avoid Section 301 preemption of an IIED claim. *Humble*, 305 F.3d at 1012. While an employer's conduct may see unfair or insensitive, that conduct may actually be the product of terms in the CBA. *Id.* Thus, "the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable." *Miller v. AT&T Network Sys.*, 850 F.2d 543, 550 (9th Cir. 1988); *see also Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1999) ("We have repeatedly held that determining whether an employer's conduct is outrageous requires an interpretation of the terms of the CBA."). While an emotional distress claim may at times be capable of evaluation without interpreting the CBA—such as when the "distress flow[s] from [] alleged offensive language," or "the violation [is] of a separate specific non-negotiable state statute, the violation of which *always* rises to the level of outrageousness"—if the negotiated terms of the CBA can justify the alleged behavior, preemption may be warranted. *Galvez v. Kuhn*, 933 F.2d 773, 780 (9th Cir. 1991); *see also Humble*, 305 F.3d at 1013–14. Thus, "if the CBA *specifically* covers the conduct at issue, the claim will generally be preempted." *Humble*, F.3d at 1013 (citation omitted). Such is the case here.

Plaintiff's allegations of outrageous behavior include Defendant's ignoring of his seniority status; however, Plaintiff's seniority is a product of the CBA, as defined by Article 10 therein. (*See* CBA 23, ECF No. 11-1.) Indeed, Plaintiff explicitly references Article 10 in making this allegation. (*See* Compl. ¶ 38(c), ECF No. 1-2.) Likewise, Plaintiff alleges that he was impermissibly transferred to a new department, an action also covered by Article 10. (*See* CBA 28, ECF No. 11-1.) Additionally, the process by which Plaintiff's complaints to Defendant were to be handled by his supervisors is specifically addressed in Article 7, Grievance Procedure. (*See id.* at 18–23.) Thus, to determine whether Defendant's conduct was outrageous, and thus a plausible basis for Plaintiff's IIED claim, the Court would have to interpret Defendant's conduct in light of the terms of the CBA. Accordingly, the Court finds that Plaintiff's IIED claim is preempted by Section 301.

**II. The Court Has Subject Matter Jurisdiction Over the Remaining Claims**

In light of the Court's determination that Plaintiff's IIED claim is preempted, the Court finds that it has subject matter jurisdiction over Plaintiffs' remaining claims regardless of whether Section 301 preempts them.

District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In any action in which the Court has original jurisdiction, it also has supplemental jurisdiction "over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.* § 1367(a). For purposes of § 1367, claims form part of the same case or controversy if they "derive from a common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). A Court may decline to exercise supplemental jurisdiction over any state claim if (1) "the claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)–(4).

For the reasons provided above, Plaintiff's IIED claim is preempted by federal law, and accordingly the Court exercises original jurisdiction over that claim. Further, the Court finds that Plaintiff's remaining claims share a common nucleus of operative fact with the IIED claim. All of Plaintiff's claims involve the same body of facts—namely, Defendant's purported mistreatment of Plaintiff subsequent to his employment-related grievances. Plaintiff's first claim, for retaliation, concerns Defendant's constructive termination of Plaintiff as a result, at least in part, of his numerous grievances. (*See* Compl. ¶¶ 85–87, ECF No. 1-2.) The same conduct underlies Plaintiff's IIED claim, making supplemental jurisdiction over the retaliation claim appropriate. Plaintiff's third and fifth claims rely on the same allegations of

retaliation as Plaintiff's first claim, rendering them equally factually related to the IIED claim. (*Id.* ¶¶ 99, 132.) Finally, Plaintiff's second and fourth claims seek punitive damages for Defendant's "deliberate, outrageous, [and] despicable conduct." (*Id.* ¶¶ 97, 127.) These references to Defendant's outrageous conduct again place these claims within the same factual nucleus as Plaintiff's IIED claim.

Thus, Plaintiff "would ordinarily be expected to try [all of these claims] all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Nor do these remaining claims predominate or raise particularly novel or complex issues of California law. Accordingly, the Court exercises supplemental jurisdiction as to Plaintiff's remaining claims, regardless of whether they arise under state law or are preempted by federal law.

**CONCLUSION**

For the reasons stated above, Plaintiff's IIED claim is preempted by the LMRA, and thus was properly removed by Defendant. Further, regardless of whether Plaintiffs' remaining claims are preempted, the Court finds that all of Plaintiff's claims derive from a common nucleus of operative fact and form part of the same case or controversy, and therefore supplemental jurisdiction over the remaining claims is appropriate. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand. Moreover, in light of the Court's disposition of this matter, the Court **DENIES AS MOOT** Defendant's Motion For Leave To File a Sur-Reply.

**IT IS SO ORDERED.**

DATED: June 9, 2014

Janis L. Sammartino

Honorable Janis L. Sammartino
United States District Judge